**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


**Mike Stanich,**

      **Plaintiff,**

-v-                                   **Case No. 2:09–cv–0143**

**Hissong Group, Inc., et al.,**           **Judge Michael H. Watson**

      **Defendants.**


## OPINION AND ORDER

Plaintiff asserts a federal statutory claim for age discrimination in employment and supplemental state law claims. Defendant moves for reconsideration of the Court's November 10, 2009 order which invited Plaintiff to file a motion for sanctions. (Defs.' Mot. for Recons. (Doc. 11).) Plaintiff moves for sanctions against Defendants' counsel pursuant to 28 U.S.C. § 1927 and to strike Defendants' motion for reconsideration. (Pl.'s Mot. for Sanctions (Doc. 14).) For the reasons that follow, the Court denies Defendants' motion for reconsideration, grants Plaintiff's motion for sanctions, and denies Plaintiff's motion to strike.

### I. BACKGROUND

Hissong Group, Inc. ("HGI") operates several dealerships of semi-trucks throughout Ohio. (Compl. (Doc. 2) ¶ 2.) Plaintiff Mike Stanich ("Stanich") worked for HGI as a general manager. (*Id.* at ¶ 3.) Darren Hissong ("Hissong") assumed control of HGI in 2005. (*Id.* at ¶ 4.) Stanich alleges that Hissong began to engage in a pattern of

behavior that amounted to age discrimination.  (*Id.* at ¶¶ 5–10.)  Around March 2008, Stanich was terminated.  (*Id.* at ¶ 9.)

On February 26, 2009, Stanich filed his Complaint against HGI and Hissong (collectively "Defendants").  In the Complaint, Stanich asserts age discrimination claims against Defendants under the Age Discrimination in Employment Act and Section 4112.99 of the Ohio Revised Code.  (*Id.* at ¶¶ 14, 19.)  Stanich also asserts claims for breach of contract and promissory estoppel.  (*Id.* at ¶¶ 21, 23.)

On April 23, 2009, Defendants filed a motion to dismiss and to compel arbitration ("motion to dismiss").  (Defs.' Mot. to Dismiss and to Compel Arbitration (Doc. 8).)  In their motion to dismiss, Defendants argued that Stanich had bound himself to a valid arbitration agreement and that, consequently, the matter should be referred to arbitration.  (*Id.* 3–5.)  Defendant attached a copy of the purported arbitration agreement to the motion.  The agreement indicated that its effective date was November 1, 2006.

On May 18, 2009, Stanich filed a response in opposition to Defendants' motion to dismiss.  (Pl.'s Resp. in Opp'n (Doc. 9).)  In his response in opposition, Stanich argued that the purported arbitration agreement did not bind him and that, as a result, the Court should deny Defendants' motion to dismiss.  Stanich acknowledged receipt of an employee handbook containing language that Defendants contended constituted a valid arbitration agreement.  (*Id.* at 1–2.)  However, Stanich argued that the handbook was not a valid arbitration agreement.  (*Id.* at 4–8.)  Specifically, Stanich contended that Defendants manifested no intent for the handbook to bind them because (1) the handbook states that Defendants can modify its contents at their sole discretion and

(2) the handbook contains language expressly disavowing that it is a contract or legal document. (*Id.* at 4–5.) Stanich acknowledged Defendants' contention that, on October 10, 2006, Stanich signed an acknowledgment form indicating that he received the handbook. (*Id.* at 5.) Stanich, however, also represented that Defendants did not include the critical arbitration language in the handbook until November 1, 2006, or three weeks after Stanich signed the acknowledgment. (*Id.*) The record before the Court at the time, which included the purported arbitration agreement with the effective date of November 1, 2006, was consistent with the Stanich's representation. Significantly, Defendants did not file a reply brief challenging Stanich's assertion.

On November 10, 2009, the Court entered an order denying Defendants' motion to dismiss. (Order (Doc. 10).) The Court held that there was no arbitration agreement between the parties for the following reasons: (1) the arbitration provision was added to the handbook after Stanich signed the acknowledgment; (2) both the handbook and the acknowledgment expressly disavow that the handbook constitutes a contract; (3) the handbook gave Defendants unilateral discretion to modify its provisions; and (4) no separate written arbitration agreement existed between the parties. (*Id.* at 1–2.) The Court also stated that it would entertain a motion by Stanich for sanctions in the form of fees and costs incurred in responding to Defendants' motion to dismiss. (*Id.* at 2.)

On November 12, 2009, Defendants filed a motion for reconsideration of the Court's November 10, 2009 order. (Defs.' Mot. for Recons. (Doc. 11).) Defendants asserted that the Court erred in concluding that the arbitration agreement was added to the employee handbook after Stanich signed the acknowledgement. (*Id.* at 2.) To support this assertion, Defendants produced a copy of the acknowledgement that

Stanich signed. (*Id.* at Ex. A.) The acknowledgement form was dated October 10, 2006, but also contained the same language as the arbitration agreement indicating it would take effect on November 1, 2006. (*Id.*) Furthermore, Defendants argued that the unilateral right to modify an arbitration agreement does not render it unenforceable where the party retaining this right must provide notice of the modification. (*Id.* at 2.) For these reasons, Defendants argued that they had a good faith basis for their motion to dismiss and that, therefore, the court should reconsider its statement that it would entertain a motion to compel sanctions. (*Id.* at 3.)

On November 30, 2009, Stanich filed a memorandum in opposition to Defendants' motion for reconsideration. (Pl.'s Resp. in Opp'n (Doc. 13).) The following day, Stanich filed a motion for sanctions. (Pl.'s Mot. for Sanctions (Doc. 14).) The Court now turns its attention to the latter.

## II. DISCUSSION

### A. Alternative legal standards for sanctions

Courts have both inherent and statutory authority to impose the sanction of attorney fees. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (citations omitted). Under a court's inherent authority, it may impose such sanctions when attorneys act in bad faith. *Id.* (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766–67 (1980)). In this context, bad faith connotes subjective bad faith—i.e. willful abuse of the judicial process. *Id.*

Additionally, courts have two general statutory sources of authority to impose the sanction of attorney's fees. For its part, Rule 11 of the Federal Rules of Civil Procedure authorizes courts to impose sanctions, including attorney fees, on attorneys who violate

certain provisions of the Rule. *See* FED. R. CIV. P. 11. Two basic requirements must be

met for an attorney to incur liability for sanctions under Rule 11. One, the attorney's

conduct must fall below an objective standard of reasonableness. *Merritt v. Int'l Ass'n*

*of Machinists & Aerospace Workers*, --- F.3d ---, No. 09–1563, 2010 WL 2852545, at

*13 (6th Cir. July 22, 2010). Two, such an award must be necessary to deter the

attorney's unreasonable conduct. *See* FED. R. CIV. P. 11(c)(4). Alternatively, 28 U.S.C.

§ 1927 gives courts discretion to award attorney fees against attorneys who "multipl[y]

the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

"[Section] 1927 sanctions require a showing of something less than subjective bad faith,

but something more than negligence or incompetence." *Red Carpet*, 465 F.3d at 646.

"Thus, an attorney is sanctionable when he . . . knowingly disregards the *risk* that his

actions will needlessly multiply proceedings." *Id.* (citation omitted) (emphasis added).

Accordingly, the standard for the imposition of attorney's fees under Section 1927

occupies a middle ground between the relatively high standard of subjective bad faith

and the relatively low standard of objective reasonableness. *Compare id. with*

*Roadway Exp.*, 447 U.S. at 766–67, *and Merritt,* 2010 WL 2852545, at *13.

In this case, Stanich moves for sanctions under Section 1927. However, Stanich

did not request the Court to award attorney's fees under either Rule 11 or its inherent

authority. Nothing in the record indicates that Defendants filed their motion to dismiss

or their motion for reconsideration in bad faith. Thus, the Court declines to consider

Stanich's motion under its inherent authority.

Likewise, the Court declines to consider Stanich's motion under Rule 11. Rule

11 contains language suggesting that it is improper to treat motions for sanctions under

other sources of authority as motions for sanctions under Rule 11.  *See* FED. R. CIV. P.

11(c)(2) (stating that motions for sanctions brought under Rule 11 "must be made

*separately from any other motion* and must describe the specific conduct that *allegedly*

*violates Rule 11(b)*") (emphasis added); *Ridder v. City of Springfield*, 109 F.3d 288, 297

(6th Cir. 1997) (treating Rule 11 and Section 1927 motions differently).  Furthermore,

the Court expresses reluctance to read arguments into a party's motion.  Be that as it

may, the Court's refusal to treat Stanich's motion for sanctions as a Rule 11 motion has

no discernable impact on the outcome of Stanich's motion.  The standard for awarding

attorney fees under Rule 11 (i.e. objective reasonableness) is less rigorous than the

standard for awarding attorney fees under Section 1927 (i.e. recklessness).  Therefore,

since Stanich will prevail on his Section 1927 claim, any award under Rule 11 would

merely duplicate this award.  *Cf. Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*,

88 F.3d 368, 375 (6th Cir. 1996) (holding that trial court did not abuse its discretion in

deciding not to declare sanctions under Section 1927 where it held that movant was

entitled to relief under Rule 11).

## B.    The propriety of sanctions under 28 U.S.C. § 1927

In his motion for sanctions, Stanich makes two basic arguments: (1) Defendants

are subject to sanctions for the attorney fees that Stanich incurred in responding to

Defendants' motion to dismiss; and (2) Defendants are subject to sanctions for the

attorney fees that Stanich incurred in responding to Defendants' motion for

reconsideration.  (Pl.'s Mot. for Sanctions (Doc. 14) 3, 4.)  The Court will address these

arguments in turn.

### 1.    Defendants' counsel are subject to sanctions for recklessly filing the motion to dismiss

28 U.S.C. § 1927 gives courts discretion to award attorney fees against attorneys who "multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  The Sixth Circuit has construed "vexatiously multiplying proceedings to include conduct where an attorney knows or *reasonably should know* that . . . his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims." *Parrott v. Corley*, 266 F. App'x 412, 414 (6th Cir. 2008) (citing *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)) (emphasis added) (internal quotation marks omitted).

In this case, Defendants' counsel reasonably should have known that their motion to dismiss ran the risk of needlessly multiplying the proceedings.  First, both the handbook and the acknowledgment form explicitly state that the handbook is not a contract.  Second, as the handbook gives Defendants the unilateral right modify it at any time, it lacks mutuality of obligation.  The Court finds that filing the motion to dismiss in the face of these two facts warrants the imposition of sanctions under Section 1927.  In addition, the Court concludes that Defendants' based their motion to dismiss almost entirely on an erroneous misreading of a single authority.

### a.    The purported arbitration agreement explicitly states that it is not a contract

The validity of arbitration agreements is determined in accordance with state contract law.  *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 821 (S.D. Ohio 1999) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)).

Ohio has the most significant relationship to the contract and the parties when (1) an arbitration agreement that is the subject of a dispute between an employee and his employer is allegedly formed in Ohio and (2) the employee's employment and termination occur in Ohio. *See Morrison*, 70 F. Supp. 2d at 821. In this case, Defendants are located in Ohio and Stanich worked for Defendants exclusively in Ohio. (Compl. (Doc. 2) ¶¶ 1–11.) Furthermore, Defendants gave Stanich the handbook in Ohio. (Pl.'s Resp. in Opp'n (Doc. 9) 1.) The Court will therefore apply Ohio law in this matter.

Ohio law requires mutual assent (i.e. a meeting of the minds) to form a valid contract. *Dantz v. Am. Apple Group, LLC.*, 123 F. App'x 702, 707 (6th Cir. 2005) (citations omitted). "Mutual assent requires that both parties have a clear and unequivocal intent to bind themselves to an agreement." *Calloway v. Miami Valley Reg'l Transit Auth.*, No. 12296, 1991 WL 35261, at *4 (Ohio App. 2 Dist. Mar. 12, 1991). *See also Cohen & Co., CPAs v. Messina, CPA*, 492 N.E.2d 867, 870 (Ohio App. 8 Dist. 1985). Accordingly, disclaimers that handbooks are not intended to form a contract vitiate the mutual assent required for contract formation. *See Karnes v. Doctors Hosp.*, 555 N.E.2d 280, 282 (Ohio 1990) (holding that an employee manual was not a contract, in part because the "manual specifically disclaim[ed] any intent to create a contractual relationship . . . ."). *See also Terrell v. Uniscribe Prof'l Servs., Inc.*, 348 F. Supp. 2d 890, 894 (N.D. Ohio 2004) (stating that "explicit disclaimers that the handbook was not intended to create an employment contract . . . clearly manifest[] the absence of mutual assent to create a contract") (citation and footnote omitted). Therefore, "while employee handbooks may constitute components or evidence of an

employee contract, absent a meeting of the minds, an employee handbook constitutes a unilateral statement of company rules and regulations." *Russell v. Gen. Elec. Co.*, No. C–1–92–343, 1994 WL 16006017, at \*17 (S.D. Ohio Jan. 14, 1994) (citing *Messina*, 492 N.E.2d at 870) (internal citation omitted).

The handbook in question explicitly states that the "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between HGI and any of its employees." (Pl.'s Resp. in Opp'n (Doc. 9) Ex. B.) Likewise, the employee acknowledgment form that Stanich signed states that "this handbook is neither a contract of employment nor a legal document." (Defs.' Mot. for Recons. (Doc. 11) Ex. A.) Therefore, it is immaterial that the handbook contains language purporting to bind Stanich to a mandatory arbitration process. The above-cited provisions of the handbook manifest unequivocally that Defendants did not intend to bind Stanich to the mandatory arbitration process. Because Defendants lacked this intent, the parties lacked the mutuality of assent essential for contractual formation, and the handbook's arbitration provision is merely precatory.

### b. The purported arbitration agreement lacks mutuality of obligation

Even if the handbook were not invalid for lack of mutual assent, it would be invalid for lack of mutuality of obligation. In Ohio, consideration is a requirement for contractual formation. *See Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). Consideration requires mutuality of obligation. *See Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 855 (S.D. Ohio 2003) (noting that mutuality of obligation "goes hand in hand

with the concepts of consideration and illusory promise"). Mutuality of obligation means that both parties must be bound to the terms of a contact. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000). Where a party makes an illusory promise that makes performance by the promisor entirely optional, neither party is bound to the terms of the contact. *Source Assocs., Inc. v. Valero Energy Corp.*, 273 F. App'x 425, 428 (6th Cir. 2008) (citations omitted).

Courts have consistently held that arbitration agreements fail to bind employees where the employer reserves the unilateral right to modify or cancel the terms of the deal at any time. *See, e.g.*, *Floss*, 211 F.3d at 315–16. In *Floss*, Floss sued Ryan's for alleged violations of the Fair Labor Standards Act. *Id.* at 310. Floss's employer included a purported arbitration agreement in her application packet. *Id.* at 309. As a condition of employment, Floss had to sign an acknowledgement that she received the purported arbitration agreement. *Id.* Ryan's filed a motion to compel arbitration based on the purported arbitration agreement. *Id.* at 310. The district court enforced the purported arbitration agreement. *Id.* at 311.

On appeal, Floss argued that the purported arbitration agreement was unenforceable. *Id.* at 314. The Sixth Circuit agreed, holding that the purported arbitration clause amounted to an illusory promise. *Id.* at 315–16. The court noted that the purported arbitration agreement gave a third-party arbitration provider, EDSI, "the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from, Floss . . . ." *Id.* Accordingly, "EDSI's right to choose the nature of its performance renders its promise illusory." *Id.* at 316. *See also Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998) (holding that employee

handbook containing purported arbitration agreement was nonbinding because the handbook gave the employer unfettered discretion to "modify, augment, delete, or revoke any and all policies, procedures, practices, and statements contained in this Handbook at any time, without notice."); *Strasser v. Fortney & Weygandt, Inc.*, No. 79621, 2001 WL 1637502, at *5 (Ohio App. 8 Dist. Dec. 20, 2001) (holding that purported arbitration agreement in handbook was unenforceable because it "left the employer with total discretion to alter or modify the arbitration process, with notice as soon as practical to the employees").

Courts have enforced arbitration agreements that give the promisor the unilateral right to modify an agreement where the agreement requires the promisor to give advance notice of her intent to do so. *See, e.g., Crowe v. BE & K, Inc.*, No. 2:09–cv–873, 2010 WL 1640884 (S.D. Ohio Apr. 22, 2010). In *Crowe*, the plaintiff ("Crowe") argued that a "Dispute Resolution Program" ("DRP") was unenforceable because it lacked mutuality of obligation. *Id.* at *2–5. One can trace the dispute to the day that Crowe's employer informed him it was replacing the existing "Employee Solution Program" with the DRP and that he could not continue his employment unless he agreed to the DRP's terms. *Id.* at *1. "Crowe subsequently signed a document acknowledging his receipt and review of the DRP materials." *Id.* Crowe's employer eventually terminated his employment, after which Crowe brought a diversity action in which he asserted several state-law claims. *Id.* Crowe's employer then filed a motion to compel arbitration. *Id.*

The court in *Crowe* noted that the DRP lacked mutuality of obligation. *Id.* at *3. The court started its analysis by noting that the DRP was distinguishable from the

arbitration agreement at issue in *Floss*.  *Id.*  Unlike *Floss*, Crowe's employer did not

possess unfettered discretion to amend the DRP; the DRP required Crowe's employer

to give thirty days' notice of any changes before such changes would take effect.  *Id.;*

*accord*, *Morrison*, 70 F. Supp. 2d at 823 (holding that arbitration agreement did not lack

mutuality of obligation where defendant could modify it only "at certain times and only

after providing 30 days' notice to employees.").

　　　　In this case, the purported arbitration agreement lacks mutuality of obligation.

Like the purported arbitration agreements in *Floss*, *Trumbull*, and *Strasser*, the

purported arbitration agreement in question gives Defendants the unilateral right to

modify its terms.  Page one of the handbook states that "[t]he provisions of the

handbook . . . may be amended or cancelled at any time, at *HGI's sole discretion*." (Pl.'s

Resp. in Opp'n (Doc. 9) Ex. B (emphasis added).)  Similarly, the employee

acknowledgment form located on page 84 of the handbook contains the following

language:

> Since the information, policies, and benefits described here are necessarily
> subject to change, I acknowledge that revisions to the handbook may occur
> . . . . All such changes will be communicated through official notices, and I
> understand that revised information may supersede, modify, or eliminate
> existing policies. *Only the President of HGI* has the ability to adopt any
> revisions to the policies in this handbook.

(*Id.* Ex. A (emphasis added).)  As in *Floss*, the preceding language constitutes an

illusory promise.  In other words, by unilaterally reserving the right to change the terms

of the purported arbitration agreement, Defendants are not truly binding themselves to

the arbitration process.  And since the purported arbitration agreement does not bind

Defendants, it lacks mutuality of obligation.

In their brief in opposition to Stanich's motion for sanctions ("brief in opposition"),
Defendants try to distinguish the instant case from *Floss*.  (Defs.' Resp. in Opp'n (Doc.
16).)  Defendants construe *Floss* for the proposition that "an employer's right to modify
[a purported arbitration agreement] does not render the [agreement] unenforceable if
the party cancelling or modifying the provision must first provided [sic] notice of such
modification or cancellation."  (*Id.* at 3.)  The *Floss* court never suggested that a
requirement that an employer *merely notify* the employee of its decision to change the
terms of an arbitration agreement renders it valid.  Under this expansive construction of
*Floss*, an employer could inform an employee of its decision to radically alter the terms
of an arbitration agreement immediately after both parties had bound themselves to the
agreement and the employee would be left without any of the protections for which he
had bargained.  *Crowe* and *Morrison* illustrate that this is an improper interpretation of
*Floss*.  Those cases propose that arbitration agreements allowing an employer to
unilaterally modify the terms of the agreement are mutually binding where the employer
must give *advance* notice of the modification.  The agreements at issue in both cases
required the employers to give thirty days notice of any modification.  The *Crowe* court
reasoned that the requirement of advance notice ensures that the employer's promise
to adhere to the original agreement is consideration.  *Crowe*, 2010 WL 1640884, at *4
(citing *Morrison*, 317 F.3d at 667–68; RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt.
b, illus. 5 (1981)).  In other words, if the employer cannot modify the terms for thirty
days, the employer is actually promising to provide something of value (i.e. thirty days'
adherence to the terms of the arbitration agreement).  *See id.* (citing RESTATEMENT
(SECOND) OF CONTRACTS § 77 cmt. b, illus. 5 (1981)).  In contrast to *Crowe* and

*Morrison*, the purported arbitration agreement in question contains no requirement of *advance* notice for modifications.  It merely states that "[a]ll such changes will be communicated through official notices . . . ."  (Pl.'s Resp. in Opp'n (Doc. 9) Ex. A.)  As illustrated above, Defendants could issue such an "official notice" concurrently with or even after a modification to the handbook.  Therefore, the purported arbitration agreement constitutes an illusory promise and, hence, is unenforceable.

Defendants' counsel should have recognized from the plain language of the handbook and acknowledgment that the purported arbitration agreement lacks mutuality of assent and mutuality of obligation.  Apprised with the same circumstances, a reasonable attorney should have perceived the risk that the motion to dismiss would needlessly obstruct the litigation of Stanich's claims.  Thus, Defendants' counsel violated 28 U.S.C. § 1927.

### c.    Defendants' key authority does not alter the conclusion that counsels' conduct is sanctionable

Defendants rely heavily on *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847 (S.D. Ohio 2003), for the following two propositions: (1) "An arbitration agreement contained within the confines of the employer's policy manual is a valid arbitration agreement between an employer and its employees to arbitrate claims that fall within the scope of the arbitration provision"; and (2) "An employee can accept the terms of the arbitration provision by executing an acknowledgment form or by continuing his or her employment after being presented with the policy manual that contained the arbitration provision." (Defs.' Mot. to Dismiss (Doc. 8) 3.)  This proposes that an arbitration agreement contained in an employee handbook is valid and binding when (1) the employee's

claims fall within the scope of the arbitration agreement and (2) the employee signs an acknowledgment of receipt of the handbook or continues his employment after receiving the handbook. The parties do not dispute that Stanich's claims fall within the scope of the arbitration agreement. Thus, the question is whether *Raasch* supports the proposition that an employee handbook containing an arbitration clause is valid when (1) the employee signs an acknowledgement of receipt of the handbook and (2) continues his employment after receiving the handbook.

The *Raasch* court held nothing of the sort. In *Raasch*, the plaintiff ("Raasch") sued his employer for age discrimination. *Id.* at 850. Raasch's employer ("NCR") responded with a motion to dismiss and to compel arbitration based on a purported arbitration agreement between the parties. *Id.* Raasch raised four major counterarguments in his memorandum in opposition. *Id.* at 850–51. Only two of these arguments are relevant here. First, Raasch argued that the purported arbitration agreement was invalid inasmuch as it lacked mutuality of obligation. *Id.* at 855. In Raasch's view, the purported arbitration agreement excluded from its coverage the claims that NCR would be most likely to pursue; therefore, it imposed unequal obligations on the parties. *Id.* The court stated that Raasch had misunderstood the requirement of mutuality of obligation. *Id.* Relying on *Floss*, the *Raasch* court noted that mutuality of obligation is part and parcel of the concept of consideration; therefore, when an arbitration agreement is based on an illusory promise, it lacks mutuality of obligation. *See id.* at 855–56. The court then stated that "mutuality of obligation does not mean . . . that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other." *Id.* at 856. The court noted that

*Floss* "involved an agreement which gave one party an unfettered right to change the details of the agreement." *Id.* at 857. The court observed no such defect in the arbitration agreement before it. *Id.* Accordingly, the court characterized *Floss* as "inapposite" and held that the arbitration agreement was mutually binding. *Id.*

Raasch's second major argument was that the arbitration agreement was invalid for a lack of "consideration of its own." *Id.* at 862. That is, NCR's promise to continue to employ Raasch on the condition that he agree to arbitrate his claims did not constitute a valuable exchange. *See id.* at 862–64. Due to the at-will nature of the parties' employment relationship, NCR did not have an obligation to keep Raasch in its employ regardless of whether he agreed to arbitrate his disputes. *See id.* Thus, since its promise to continue to employ him was no greater than a right NCR already possessed, the promise was illusory. *See id.* The court rejected this argument. *Id.* The court stated that the consideration behind the exchange becomes apparent when one views the agreement as a promise not to fire Raasch as long as he agrees to certain terms (as opposed to keeping him employed over a certain period of time). *Id.* at 864. Additionally, the court determined that asking whether Raasch had ever accepted the terms of the agreement constituted a sounder analytic window through which to view the case. *Id.* at 866. The agreement explicitly provided that Raasch's continued employment or the acceptance of the benefits of employment (e.g. bonuses) would constitute his agreement to all the terms of the arbitration agreement. *Id.* Therefore, because Raasch continued to work for NCR and accepted the benefits of employment after receiving the arbitration agreement, he manifested his acceptance of its provisions. *Id.*

Thus expounded, it is readily apparent that *Raasch* does not support the proposition for which Defendants have cited it, let alone belie this Court's determination that the purported arbitration agreement in this case is invalid. The arbitration agreement at issue in *Raasch* explicitly stated that Raasch would not be asked to sign it. Therefore, the central issue was whether an employee handbook containing a purported arbitration agreement is valid where the employee continues his employment after receiving the handbook. The *Raasch* court simply held that continued employment could constitute consideration for an arbitration agreement and, under certain circumstances, acceptance of an arbitration agreement. As the court's reasoning makes clear, however, the presence of such consideration and/or acceptance does not end the mutuality of obligation analysis. The court acknowledged in its discussion of *Floss* that arbitration agreements giving employers unfettered discretion to change the agreement's terms are unenforceable for lack of mutuality of obligation. In fact, the court examined NCR's agreement and stated that it could not find "any such *defect*." *Id.* at 857 (emphasis added). Besides, in *Floss*, Floss continued her employment for over a year after she received the purported arbitration agreement and the court nevertheless held that it lacked mutuality of obligation. *See Floss*, 211 F.3d at 310. *See also Trumbull*, 12 F. Supp. 2d at 684 (plaintiff continued her employment for at least seventeen months after receiving a purported arbitration agreement and court held that agreement lacked mutuality of obligation).

The preceding analysis reveals that *Raasch* fails to support the proposition for which Defendants have cited it, and that *Raasch* is fully consistent with this Court's conclusion that the agreement in question lacks mutuality of obligation. Furthermore,

even assuming *Raasch* were apposite, *Raasch* is silent on the issue of mutuality of assent (i.e. on the purported agreement's language disclaiming that it was a contract or a legal document). Consequently, *Raasch* does not detract from the Court's conclusion that the conduct of Defendants' counsel was sanctionable.

### 2. *Defendants' counsel are subject to sanctions for recklessly filing the motion for reconsideration*

District courts have authority to entertain motions for reconsideration in both the common law and Federal Rules of Civil Procedure 54(b). *Bonar v. Romano*, No. 2:08–cv–560, 2010 WL 1404305, at *1 (S.D. Ohio Apr. 7, 2010) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x. 949, 952 (6th Cir. 2004)). Pursuant to such authority, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Id.* (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Courts have traditionally found justification for reconsidering interlocutory orders when there is "(1) an intervening change of controlling law; (2) new evidence; or, (3) a need to correct a clear error or prevent manifest injustice." *Id.* (quoting *Rodriguez*, 89 F. App'x at 959). "However, a motion for reconsideration 'should not be used to re-litigate issues previously considered.'" *Id.* (quoting *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 F. App'x 668, 671 (6th Cir. 2003).

Defendants' ground their motion for reconsideration on two arguments. First, they argue that the Court's order incorrectly stated that the purported arbitration agreement was added to the handbook after Stanich signed the acknowledgment of receipt. (Defs.' Mot. for Recons. (Doc. 11) 1–2.) Second, Defendants rehash their

argument that an employer's unilateral right to modify an arbitration agreement does not render it unenforceable if the employer must give the employee "notice" of the cancellation. (*Id.* at 2–3.) Based on these arguments, Defendants conclude that they had a "good faith basis" for filing their motion to dismiss. (*Id.* at 3.) Accordingly, Defendants ask the Court to "reconsider its decision that it will consider a motion for sanctions by [Stanich]." (*Id.*)

This Court concludes that Defendants' counsel should have perceived the risk that their motion for reconsideration would needlessly multiply the proceedings. In their motion for reconsideration, Defendants fail to direct the Court's attention to either an intervening change in controlling law or new evidence. Furthermore, as the analysis in Section II.B.1, *supra*, reveals, the Court's order denying Defendants' motion to dismiss was correct. Therefore, Defendants had no need to correct clear error or to prevent manifest injustice. Defendants now present evidence, after the fact, indicating that the purported arbitration agreement was not added to the handbook after Stanich signed the acknowledgment of receipt, contrary to Stanich's representation to the Court.[1] Defendants should have challenged Stanich's assertion in a reply brief rather than waiting to address the issue in its motion for reconsideration. Regardless, the fact that the manual contained the arbitration provision when Stanich signed the acknowledgment does not change the soundness of the Court's order. As Section

---

[1]  Stanich's response to Defendant's motion to dismiss stated: "Notably, the arbitration language was not included in the handbook until November 1, 2006, three weeks **after** Mr. Stanich allegedly signed the acknowledgment." (Pl.'s Resp. in Opp'n (Doc. 9) 5) (emphasis in original).) Consistent with Stanich's representation, the arbitration provision attached to Defendants' motion to dismiss indicates the effective date of the provision was "11/1/2006." (Defs.' Mot. to Dismiss (Doc. 8) Ex. 1.) Defendants made no effort to challenge Stanich's assertion until after the Court denied the motion to dismiss.

II.B.1 illustrates, the Court properly denied Defendants' motion to dismiss primarily because the purported arbitration agreement lacks *both* mutuality of assent and mutuality of obligation. Therefore, the presence of the purported arbitration agreement in the handbook at the time Stanich signed the acknowledgement of receipt does not invalidate the Court's decision.

It is also problematic that in their motion to reconsider, Defendants' counsel asked the Court to reconsider a statement that it would entertain a motion for sanctions, as opposed to asking the Court to reconsider the order itself.  As Stanich points out, Defendants could have waited for Stanich to file a motion for sanctions and then filed a memorandum in response.  (Pl.'s Resp. in Opp'n (Doc. 13) 2.)  Indeed, the arguments that Defendants make in their brief in opposition to Stanich's motion for sanctions duplicate the arguments in their motion for reconsideration.  (*Compare* Defs.' Resp. in Opp'n (Doc. 16), *with* Defs.' Mot. for Recons. (Doc. 11).)  Similarly, portions of Stanich's memorandum in opposition to Defendants' motion for reconsideration overlap with his motion for sanctions.  (*Compare* Pl.'s Resp. in Opp'n (Doc. 13), *with* Pl.'s Mot. for Sanctions (Doc. 14).)  But, unlike Defendants, Stanich had a good reason to file his memorandum in opposition before filing his motion for sanctions.  Rule 7.2(a)(2) of the Local Rules for the Southern District of Ohio states that "[f]ailure to file a memorandum in opposition may be cause for the Court to grant any Motion . . . ."  S.D. Ohio Civ. R. 7.2(a)(2).  Accordingly, Defendants' motion for reconsideration compelled Stanich's response, thereby needlessly multiplying the proceedings.

In light of the preceding observations, Defendants' counsel should have perceived the risk that their motion for reconsideration would needlessly multiply the

proceedings.  Therefore, Defendants' counsel violated 28 U.S.C. § 1927.

**C.     The proper measure of sanctions under 28 U.S.C. § 1927**

In pertinent part, Section 1927 provides as follows: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy . . . attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Deterrence and punishment are the primary purposes of Section 1927 sanctions.  *Red Carpet*, 465 F.3d at 646–47 (citations omitted).  Courts use the "lodestar" approach to determine the amount of reasonable attorney's fees.  *Studio A Entm't, Inc. v. Action DVD*, 658 F. Supp. 2d 851, 856–57 (N.D. Ohio 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  To calculate the lodestar amount, one must multiply "a reasonable hourly rate by the number of hours expended by attorneys on the case."  *Id.* (citing *Hensley*, 461 U.S. at 433; *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)).  There are two prongs to the lodestar approach: (1) the reasonableness of the hours expended and (2) the reasonableness of the hourly rate.  *Trustees of Bldg. Laborers Local 310 Pension Fund v. Able Contracting Group, Inc.*, No. 06CV1925, 2009 WL 792472, *4–5 (N.D. Ohio Mar. 23, 2009) (citing *Grandview Raceway*, 46 F.3d at 1401).  There is a "strong presumption" in the reasonableness of the lodestar amount.  *Id.* (citing *Grandview Raceway*, 46 F.3d at 1401).  "The district court must make some inquiry concerning an attorney's ability to pay a monetary sanction."  *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989).

In his motion for sanctions, Stanich first argues that Defendants' counsel are

subject to $1,400 in attorney's fees for the expenses he incurred in responding to Defendants' motion to dismiss. (Pl.'s Mot. for Sanctions (Doc. 14) 3–4.) To support this claim, Carla E. Oglesbee, lead attorney on Stanich's case, submitted an affidavit with Stanich's motion for sanctions. (*Id.* Ex. A.) According to the affidavit, Ms. Oglesbee spent a total of seven hours preparing and filing Stanich's response in opposition. (*Id.*) Ms. Oglesbee further swears that her present hourly rate is $200. (*Id.*) Thus, the lodestar amount for Stanich's response in opposition to Defendants' motion to dismiss is $1,400.

Next, Stanich argues that Defendants' counsel are subject to attorney's fees in the amount of $720 for the expenses he incurred in responding to Defendants' motion for reconsideration. (*Id.* at 4.) For her part, Lisa Nicole Hanselman, co-counsel in Stanich's case, submitted an affidavit in support of Stanich's motion for sanctions. (*Id.* Ex. B.) According to her affidavit, Ms. Hanselman spent four hours drafting Stanich's memorandum in opposition to Defendants' motion for reconsideration. (*Id.*) Ms. Hanselman further swears that her present hourly rate is $150. (*Id.*) Additionally, Ms. Oglesebee swears in her affidavit that she spent .6 of an hour reviewing and revising the memorandum that Ms. Hanselman prepared. (*Id.* Ex. A.) Thus, the lodestar amount for Stanich's memorandum in opposition is $720 (4 x $150 = $600; .6 x $200 = $120; $600 + $120 = $720).

The lodestar amount of $1,400 for Stanich's response in opposition to Defendants' motion to dismiss represents an appropriate award for Defendants' counsels' violation of Section 1927. Under the facts and circumstances of this case, seven hours is a reasonable amount of time to spend on a response in opposition to a

motion to dismiss.  Stanich's response in opposition is an eight-page document containing a factual background, attached exhibits, and a legal argument section discussing apposite authorities.  *See Legair v. Circuit City Stores, Inc.,* No. 2:01–cv–00985, 2006 WL 278405, at *2 (S.D. Ohio Feb. 3, 2006) (ruling that 37.1 hours spent on a motion for contempt and sanctions was not unreasonable). Furthermore, $200 is a reasonable hourly rate for a lead attorney on an employment discrimination case.  *See Able Contracting Group*, No. 06CV1925, 2009 WL 792472, at *5 (N.D. Ohio Mar. 23, 2009) (citing cases) (stating that the court's research indicated that Ohio district courts usually award attorney's fees at an hourly rate between $200 and $300).  Moreover, $1,400 is neither greater nor less than the amount necessary to deter Defendants' counsel from needlessly multiplying the proceedings.  Defendants' motion to dismiss was legally groundless.  Defendants' counsel should have perceived the risk that filing a groundless motion purporting to terminate the action would compel Stanich to respond, thereby causing unnecessary expense and needless delay for both Stanich and the Court.

The lodestar amount of $720 is also an appropriate sanction for Defendants' counsels' violation of Section 1927 with respect to their motion for reconsideration. Defendants' motion for reconsideration (1) failed to satisfy the legal standard for a motion for reconsideration, (2) duplicated arguments that Defendants' later made in their brief in opposition to Stanich's motion for sanctions, and (3) compelled Stanich to submit a memorandum in opposition to Defendants' motion for reconsideration. Defendants' motion for reconsideration does clarify that the employee manual contained the purported arbitration provision when Stanich signed the acknowledgment.

Nonetheless, Defendants' counsel should have responded to Stanich's mistaken assertion in a reply brief *before* the Court issued its decision on the motion to dismiss rather than waiting until after the decision was issued to address the matter.

In accordance with the above discussion, the Court holds Defendants' counsel liable to Stanich for attorney fees in the amount of $2,120 (i.e. $1,400 + $720) for their violation of 28 U.S.C. § 1927.

**D.     Motion to strike**

As a final matter, in his response in opposition to Defendants' motion for reconsideration, Stanich moves to strike the motion for reconsideration. Since Stanich responded to the motion, and the Court has analyzed and ruled on it, the Court sees little utility in striking Defendants' motion for reconsideration. Accordingly, the Court denies Stanich's request.

## IV.  DISPOSITION

For the foregoing reasons, the Court **DENIES** Defendants' motion for reconsideration (Doc. 11), **DENIES** Stanich's motion to strike (Doc. 13), and **GRANTS** Stanich's motion for sanctions. (Doc. 14.) In light of *Law Firm of O'Hara,* 875 F.2d at 1230, the Court **ORDERS** Defendants' counsel to submit documentation pertaining to their ability to satisfy the amount of sanctions imposed on them. Defendants' counsel shall submit such documentation within 14 days of the entry of this order. If, and only if, the Court finds that Defendants' counsel are unable to pay all or a part of the $2,120 award, the Court will reduce it accordingly. If the Court determines that Defendants' counsel are able to satisfy the full award, or if Defendants' counsel decline to submit

such documentation, the Court will issue a separate order for Defendants' counsel to satisfy the full $2,120 award.

The Clerk shall remove Documents 11, 13, and 14 from the Court's Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**